UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AUTO-OWNERS INSURANCE COMPANY, ) ) Plaintiff, ) ) v. ) ) THOMAS DYER and ELOIS TAYLOR, ) ) Defendants. ) | No. 1:16-cv-00486-SEB-MPB |

**ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

This matter is before us on Plaintiff Auto-Owners Insurance Company's ("Auto-Owners") Motion for Summary Judgment. [Dkt. No. 30.] The parties agree that there is no dispute as to any material facts. For the reasons explained below, we DENY the motion.

**Facts**

This lawsuit arises out of an automobile accident that occurred on July 13, 2013, between a vehicle driven by Elois Taylor and a vehicle driven by car mechanic Thomas Dyer. Dyer was employed by TKW Auto Sales which was owned by Kenny White and Wayman Coffer. The owners of TKW were not at the dealership on the day of the Accident; however, Dyer was at work on cars at the business that day. Dyer took a Volkswagen owned by a customer of TKW (the "Vehicle") out for a test drive. It was during this test drive that Dyer's car collided with Taylor's (the "Accident").

Dyer's driver's license had been suspended from approximately 1992 to September 2014. When he was hired by TKW in April, 2013, Dyer disclosed that he did not have a valid driver's license. Regardless, as part of his responsibilities to diagnose problems with

customer vehicles, Dyer test drove vehicles with the express knowledge and encouragement TKW's owners. Over time, Mr. White and Mr. Coffer observed Dyer test drive vehicles, never inquiring of him or instructing him not to drive customers' vehicles. Indeed, prior to the Accident, Dyer and TKW's owners discussed payment of Dyer's traffic fees so that his license could be reinstated. The first and only time Mr. White asked Dyer not to test drive vehicles was the Monday after the Accident.

Prior to the accident, Auto-Owners issued a garage liability policy to TKW under policy number 43-018-778-01 effective from February 28, 2013 to February 28, 2014 ("the Policy"). [*See* Doc. 6-2, which is Auto-Owners Insurance Company's Policy attached to Auto-Owners's Amended Complaint for Declaratory Judgment as Exhibit "B".] The Policy provides insurance coverage for bodily injury and property damages described in an endorsement specifically for "garage liability." [Policy at 17-18[1], 60-61.] That endorsement obligates Auto-Owners to "*pay damages for bodily injury and **property damage** for which the **insured** becomes legally responsible because of or arising out of an **auto** … While used by any person in **your** business.*" [*Id.* at 60 (bolded terms are defined elsewhere in the Policy).] The Garage Liability endorsement defines an "insured" under the policy as "*Any other persons … using an **auto**, … with **your** permission.*" [*Id.* at 61.]

On July 9, 2015, Elois Taylor filed a Complaint against Thomas Dyer and TKW in the Marion Superior Court under cause number 49D07-1507-CT-022666, seeking judgment against both TKW and Dyer for damages she sustained as a result of the

---

[1] The page number citations to the Policy refer to the page notations as generated by the CM/ECF docket.

Accident. [Doc. 6-1.] In the case before us, Auto-Owners seeks a declaratory judgment that the Policy does not provide coverage for the Accident. Among other reasons,[2] Auto-Owners contends that Dyer did not have the requisite permission to operate the Vehicle because both he and TKW had actual knowledge that his license had been suspended and he could not legally operate the Vehicle. Defendant Taylor argues that the Policy provides coverage where TKW gave Dyer express permission to operate the Vehicle and such permission was given here. Dyer did not respond to Auto-Owners's Motion and the time for doing so has passed.

**Summary Judgment Standard**

Summary judgment is appropriate when the record before the Court establishes that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Generally, construction of a written contract is a question of law for which summary judgment is particularly appropriate." *N. Ind. Pub. Serv. Co. v. Dabagia,* 721 N.E.2d 294, 299 (Ind. Ct. App. 1999) (citation omitted).

---

[2] Auto-Owners has not moved for summary judgment on its alternative theory for relief, to wit, that "even if Dyer had valid permission to use the vehicle, Dyer's use of the customer's vehicle was outside the scope of that permission" [Am. Compl. ¶ 25].

**Discussion**

The issue here is a narrow one: as a matter of law, could TKW give Dyer permission to operate the Vehicle when both it and Dyer knew that Dyer could not lawfully operate the Vehicle on public roadways on account of his suspended license? Auto-Owners says no; permission to commit an illegal act cannot be deemed permission under any circumstances.

Contending that the issue raised in its lawsuit is a case of first impression, Auto-Owners points to no Indiana authority holding that permission to engage in illegal behavior is not permission as that term is used in an insurance policy. In the absence of any specific legal authority directly on point, Auto-Owners relies on two Indiana cases interpreting an insurance policy exclusion for persons operating the covered "vehicle without a reasonable belief that the person is *entitled* to do so." Not only is such an exception not at issue here (the Policy does not contain the "reasonable belief" exclusion at issue in those cases), but the term "entitled" clearly is not the same as "permission."

The first case Auto-Owners relies on is *Smith v. Cincinnati Insurance Company*, 790 N.E.2d 460 (Ind. 2003). In *Smith*, Natalie Deem owned a car insured by the defendant insurance company. Deem was out late one night with her fifteen-year-old friend, Courtney Smith, when Deem became extremely intoxicated and wanted to go home. Smith claimed that Deem gave her permission to drive Deem's car; however, Deem does not recall giving such permission. Smith did not possess a valid driver's license at the time. While driving Deem home, Smith ran off the roadway, injuring both herself and Deem. After a bench trial, the trial court found that Deem's insurance policy did not provide

4

coverage for the accident, a decision that was affirmed by both the Court of Appeals and the Indiana Supreme Court.

The issue in *Smith* was the application of a policy provision excluding coverage for persons "[u]sing a vehicle without a *reasonable belief* that the person is *entitled* to do so." *Id.* at 461 (emphasis added). The Indiana Court of Appeals concluded that "Smith could not reasonably have believed she had permission to drive Deem's car [because]: (1) Smith was not legally entitled to drive; and (2) Deem was too intoxicated to give consent." *Id.*[3] Due to strong state and national interests to prevent drunk driving, the Indiana Supreme Court rejected the Court of Appeals conclusion that Smith could not have reasonably relied on Deem's permission because it was given when she was intoxicated. However, because "Smith was not legally entitled to drive," the Indiana Supreme Court concluded that her belief that she was entitled to operate Deem's car was not reasonable and the accident was excluded from policy coverage. *Id.* at 462.

In *Mroz v. Indiana Insurance Company*, 796 N.E.2d 830 (Ind. Ct. App. 2003), the same exclusionary provision was at issue, to wit, whether the driver had a reasonable belief that he was entitled to drive the insured vehicle. Michael Heiden allowed his seventeen-year-old son, James, to operate his van. In 2000, James's driver's license was suspended. Although Michael knew that his son did not have a valid driver's license, he still allowed

---

[3] The Indiana Court of Appeals developed a five-part test "to determine whether a driver has a reasonable belief that she is entitled to drive another person's car." *Smith*, 790 N.E.2d at 461. The third part of the test asks "whether the driver was legally entitled to drive under the laws of the applicable state." *Id.* The court in *Mroz*, *infra*, also considered this element when concluding that absent a valid license, the driver did not have a reasonable belief that he was entitled to operate the insured's vehicle.

5

James to drive to and from school and work; however, if James wanted to drive the van any other time, he was required to first obtain permission from his dad. In April, 2000, Michael gave a family friend permission to use the van to take James bowling, but specifically told James he did not have permission to drive the van that night. During an altercation at the bowling alley, James thought a man was going to stab him through the van window. James "jumped into the driver's seat and began driving away to escape the man with the knife," losing control of the van and striking a pedestrian. *Id.* at 831.

The injured pedestrian seeking insurance coverage argued that "James could have reasonably believed that he was entitled to drive because an emergency existed." *Id.* at 833 (noting that in a criminal context extreme emergency can serve as a defense to illegal operation of a motor vehicle). The Indiana Court of Appeals concluded that because James did not hold a valid driver's license at the time of the accident, he "could not have reasonably believed that he was entitled to drive under the laws of the State of Indiana;" "[t]he contract forecloses insurance coverage for a driver who is not legally entitled to drive." *Id.* at 834 ("Thus, our decision as to the liability of the insurer is controlled by our supreme court's decision in *Smith*.").

The factual situation in our case is easily distinguishable from *Smith* and *Mroz*. Here, TKW gave Dyer permission to drive the Vehicle. The question presented by Auto-Owners is not whether Dyer's belief that he had permission to drive the Vehicle was reasonable but whether, as a matter of law, Dyer had permission to operate the Vehicle despite his lack of a valid driver's license. *Smith* and *Mroz* are neither controlling nor instructive.

6

Auto-Owners's request, in relying on *Smith* and *Mroz*, seeks either to expand the language of the Policy or expand the reach of Indiana law. Auto-Owners's interpretation of the term "permission" requires that we amend the Policy language to limit the permission that TKW can give only to those legally authorized to operate a vehicle. The Policy does not include this language; thus, Auto-Owners's request runs counter to the principle of Indiana contract law which requires that we apply the plain and ordinary meaning of clear and unambiguous contracts. *Cincinnati Ins. Co. v. Am. Alt. Ins. Corp.*, 866 N.E.2d 326, 332 (Ind. Ct. App. 2007) (cited by *Auto-Owners Ins. Co. v. Benko*, 964 N.E.2d 886, 890 (Ind. Ct. App. 2012)).

Alternatively, Auto-Owners requests that we import in wholesale fashion the holdings of *Smith* and *Mroz* into a wholly unrelated insurance policy provision. Because the Indiana Supreme Court has held that a person without a valid driver's license cannot have a reasonable belief that he is entitled to drive a vehicle, Auto-Owners argues that a person without a valid driver's license cannot be given permission by the owner/bailee to operate its vehicle. Auto-Owners's proposed expansion of Indiana law is unsupported by *Smith* or *Mroz* or, so far as we can determine, any other Indiana court decision.

Auto-Owners advances a quasi-public policy argument that also fails to achieve liftoff. According to Auto-Owners, to find that Dyer had permission to drive "would be akin to sanctioning illegal conduct." [Dkt. No. 31 at 11-13 (citing Indiana statutes making driving without a license a civil penalty, including allowing an unlicensed person to operate a vehicle in your custody).] However, Auto-Owners's argument is unavailing. The

7

"permission" at issue here is not permission under the law, but permission from the insured (TKW) to the driver (Dyer).[4]

The Policy provides insurance coverage for persons using automobiles with TKW's permission and it is undisputed that, notwithstanding Dyer's lack of a valid driver's license, TKW gave Dyer its permission to operate the Vehicle. Accordingly, Auto-Owners's claim that it owes no coverage to Dyer because he could not have been given permission to operate the Vehicle is without merit.

## Conclusion

For the foregoing reasons, we DENY Auto-Owners's Motion for Summary Judgment [Dkt. No. 30].

Date: 12/5/2017

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution: All CM/ECF counsel of record

---

[4] Auto-Owners argues that Indiana Code § 27-1-13-7(a)'s minimum insurance policy requirement "ties automobile insurance coverage extended to permissive users to the requirement that the person granted permission be 'legally using or operating' the vehicle being provided." [Dkt. No. 31 at 13.] Auto-Owners cites no authority supporting its interpretation of the statute. As we see it, the quoted language "person legally using or operating the same with the permission … of such owner," relates to the legality of operation in terms of whether permission was given by the owner.